IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SIDNEY SMITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:21-cv-776-RAH |
| ) | [WO] |
| STATE FARM FIRE AND ) | |
| CASUALTY COMPANY, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

This is a breach of contract action concerning the timeliness of insurance proceeds due and payable after a fire destroyed Plaintiffs Sidney and April Smith's home. Defendant State Farm Mutual Fire and Casualty Company has moved for summary judgment. After extensive briefing and with the benefit of oral argument, the Court concludes that the motion is due to be granted in part and denied in part.

**II.      JURISDICTION AND VENUE**

Subject matter jurisdiction is conferred by 28 U.S.C. §§ 1332 and 1441. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

### III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of a claim determine which facts are material and which are not material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law. *Id.*

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the evidence in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). The nonmovant must produce sufficient evidence to enable a jury to rule in his favor; a mere scintilla of evidence in support of a position is insufficient. *Id.* at 1243.

### IV. BACKGROUND

Sidney and April Smith owned a home in Geneva, Alabama that was completely destroyed in a fire on October 10, 2019. At the time of the fire, the home was insured by State Farm Mutual Fire and Casualty Company under a homeowners

2

insurance policy that contained dwelling limits of $234,400.  (*See* Doc. 22-2.)  Melanie Garner was the Smiths' local State Farm insurance agent, and was noted as such on the State Farm policy declaration.  (*Id.* at 12.)  At the time of the fire, Bank of Ozark[1] was endorsed on the policy as the mortgagee, and a balance of approximately $35,000 remained on the mortgage.  (*Id.* at 13; Doc. 28-1 at 2.)

      The State Farm policy contained a loss settlement provision that provided that the policy would pay the actual cash value (ACV) of the dwelling at the time of loss, and when the repairs to or replacement of the dwelling had been completed, State Farm would pay the remaining cost to repair or complete up to the policy limits.  (Doc. 22-2 at 36.)   The policy makes clear that "to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss." (*Id.*)  And if a mortgagee is identified on the policy, the policy provides that any loss payable "will be paid to the mortgagee and you, as interests appear." (*Id.* at 40.)  The policy further provides that the loss payment will be made 60 days after State Farm receives a proof of loss and reaches agreement with the Smiths, there is a final judgment, or there is a filing of an appraisal award. (*Id.*)

---

[1] The mortgagee is actually identified as "BANK OZK ISAOA/ATIMA," which means Bank of Ozark and its successors and/or assigns as their interests may appear.

After being notified of the Smiths' loss, State Farm began to adjust the claim. In December, after inspecting the property and communicating with the Smiths, State Farm (through adjuster Al Williamson) estimated the replacement cost value (RCV) of the destroyed home to be $173,886.74, with an ACV of $117,536.42 and depreciation of $55,178.32. (Doc. 22-1 at 2; Doc. 28-1 at 3; Doc. 28-4 at 3.) Williamson spoke with Ms. Smith about State Farm's estimate. During the call, Ms. Smith voiced the Smiths' intention to rebuild the home. (Doc. 22-1 at 2.) She also questioned why State Farm was not giving the Smiths the total policy limits since the home was a total loss, to which Williamson responded by discussing the policy terms about ACV, RCV, and depreciation. (Doc. 22-1 at 2; Doc. 22-3 at 10.)

That same day, Williamson mailed the Smiths a check for $117,536.42 for the ACV of the destroyed home, made jointly payable to the Smiths and the mortgagee, Bank of Ozark. (Doc. 22-1 at 3; Doc. 28-1 at 3; *see also* Doc. 22-5.) According to the Smiths, they refused to cash the check and shredded it, believing the estimate was not accurate because they were entitled to the entire policy limits. (Doc. 22-1 at 3; Doc. 28-1 at 4; Doc. 28-4 at 4.)

On May 1, 2020, State Farm issued the Smiths a new check, this time for $119,245.33 to reflect an increased cost due to demolition. (Doc. 22-1 at 3; Doc. 28-1 at 4; Doc. 28-4 at 4; Doc. 22-6.) The Smiths did not cash this check either, this time because the mortgagee (originally Bank of Ozark) had changed to a new

company.  (Doc. 28-1 at 4.)  They did, however, hire a builder whose name they communicated to State Farm.  (*Id.*; Doc. 22-1 at 3.)

In February 2021, the Smiths spoke with Williamson on the phone.  (Doc. 22-1 at 3; Doc. 28-4 at 4.)  During the call, the Smiths told Williamson that there was a new mortgage company and that an engineering report stated that the slab was unusable.  (Doc. 22-1 at 3; Doc. 28-4 at 4.)  In response, Williamson told the Smiths that State Farm needed the information about the new mortgage company to include on a replacement check.  (Doc. 22-1 at 3; Doc. 28-4 at 4.)

On February 16, 2021, Mr. Smith emailed Williamson and stated that 22nd State Bank was the new mortgage company and that they were proceeding forward with rebuilding the home.  (Doc. 28-4 at 4.)  Other than its name, the email provided no other information about 22nd State Bank.  (Doc. 28-5 at 2.)  But it did include the engineer's report and a construction estimate.  (Doc. 28-4 at 4; *see also* Doc. 22-3 at 3.)

Later that month, Williamson re-adjusted the RCV and ACV on the home to account for the damaged and unusable slab.  (Doc. 22-1 at 4.)  The revised values resulted in a RCV of $198,021.16 and an ACV of $128,976.49.  (*Id.*)  State Farm, however, did not immediately issue the replacement ACV check since State Farm did not have sufficient information about the new mortgage company.  (*Id.*)

5

On March 2, 2021, Williams called on the Smiths and told them to deliver a "verification of some sort" from the new mortgage company showing that it had purchased the mortgage. (Doc. 22-3 at 2–3; Doc. 28-1 at 5; Doc. 28-4 at 5; Doc. 41-1 at 3.) According to the Smiths, Williamson told them to deliver the document to Melanie Garner (the Smiths' local State Farm agent). (Doc. 22-3 at 3; Doc. 28-1 at 5; Doc. 28-4 at 5; Doc. 41-1 at 2–3.) According to State Farm, it needed the verification "because the original mortgage company was still identified as the mortgagee on the policy when the loss occurred." (Doc. 41-1 at 3.)

According to the Smiths, they obtained a document they describe as a "Verification of Mortgage" (VOM) from 22nd State Bank, and sometime in 2021, they hand-delivered it to Garner as Williamson had instructed. (Doc. 28-1 at 5; Doc. 28-4 at 5.) According to Williamson, before this suit was filed on October 8, 2021, he "never received the verification from the new mortgage company that it had purchased the mortgage; so [he] could not process the check for the amount of the updated estimate." (Doc 41-1 at 3.) However, on September 3, 2021, State Farm

issued a renewal declaration of the policy that showed 22nd State Bank as the mortgagee.[2] (Doc. 28-2 at 2–3.)

On June 7, 2022, the Smiths provided State Farm, through State Farm's attorney, an *Assignment of Mortgage* (AOM) from Bank of Ozark to 22nd State Bank. (*See* Doc. 41-2; Doc. 54-1 at 1.) Upon receipt of the AOM, State Farm issued a check for $128,976.49 jointly payable to the Smiths and 22nd State Bank for the ACV. (Doc. 54-1 at 1.)

Although the Smiths retained a builder, the Smiths never rebuilt the home. (Doc. 22-9 at 4; Doc. 22-1 at 4; Doc. 28-1 at 4.) State Farm now says that since the Smiths failed to complete construction of the home within 2 years of the fire loss (by October 10, 2021), the Smiths are contractually foreclosed from recovering any depreciation or RCV. (Doc. 54-1 at 2.)

---

[2] Neither party has provided any information about exactly when 22nd State Bank was endorsed onto the policy, and neither party has produced a copy of the underwriting or policy service logs that may show when exactly 22nd State Bank was endorsed onto the policy or why State Farm did so. State Farm argues that a new mortgage company can be endorsed for a number of reasons, such as their receipt of an escrow check from the mortgage comapny. The Smiths have testified that they obtained a VOM from 22nd State Bank and hand-delivered it to Garner as Williamson had instructed, and that State Farm's renewal declaration confirms State Farm's receipt of that document. State Farm does not corroborate or deny that allegation. Instead, it pleads ignorance. Since the Court must view the evidence in the light most favorable to the Smiths, the Smiths' version of events must be accepted, especially in the absence of evidence otherwise.

## V.     DISCUSSION

In the Amended Complaint, the Smiths bring three claims, one of which is ripe for consideration under State Farm's summary judgment motion: Breach of Contract.[3]  In Count I, the Smiths broadly allege that a fire event caused damage to the entire home, that they made a claim for benefits under the State Farm policy, that State Farm "has refused to pay said Smiths' claim or seasonably act on said claim per the policy limits," which they go on to state "top at Five Hundred and Three Thousand and Nine Hundred and Sixty Dollars ($503,960.00)," and that "State Farm has not paid the claim."  (Doc. 14 at 1–2.)

Under Alabama law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 148 So. 3d 690, 696 (Ala. 2013) (citation omitted).  "General rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "The court must enforce the insurance policy as written if the terms are unambiguous." *Id.*

---

[3] The Amended Complaint also asserts claims for negligence and negligent training, hiring and supervision.  The Smiths did not respond to State Farm's summary judgment motion on the two negligence claims and at oral argument, they conceded that summary judgment was due State Farm on these two claims given the prevailing law as it concerns negligent claims handling.  Accordingly, the Court will proceed on the breach of contract claim only.  And as to the breach of contract claim, the Smiths state that they are proceeding only as to the dwelling coverage and that they make no claim as to the handling of the personal property claim.

State Farm moves for summary judgment, arguing that it has not breached the insurance policy because State Farm adjusted the loss according to the policy terms; that is, it adjusted the loss, determined an ACV, timely issued a check for the ACV to the Smiths and the mortgagee on the policy, and that it was not obligated to pay policy limits or replacement cost until the Smiths had rebuilt the home, which they never did.

In response, the Smiths state that they "substantially complied" with the policy's requirements and that State Farm's motion "effectively award[s] the Smiths nothing for the loss of their home." (Doc. 27 at 2, 13.) The Smiths go on to argue that State Farm breached the policy by not timely paying on the claim due to a lack of information about the new mortgage company because, as the Smiths argue, State Farm had sufficient information about the new mortgage company in order to timely issue the payment. (*Id.* at 14.) The Smiths also claim there is a question of fact regarding whether State Farm actually received an estimate to rebuild the home.[4] (*Id.*)

At the outset, the Court notes that the parties have done the Court no favors in presenting and narrowing the contract claim at issue. For one, the Amended Complaint is very broad in terms of describing the breach, and unfortunately, State

---

[4] As there is a question of fact on the timeliness of the ACV payment, the Court does not address the contractor estimate issue.

Farm did little to require the Smiths to narrowly focus the claim. Instead, in their summary judgment briefing, both parties place in front of the Court an extremely broad period of time in which the dwelling and personal property claim was handled, beginning with the fire itself on October 10, 2019, and up through today, and they discuss just about everything that has occurred during that time frame, with a broad assertion from State Farm that it has done everything right in terms of payment of the Smiths' claims under the insurance policy. If any clarity can be gleaned from the discussion at oral argument, the Smiths' breach of contract claim solely concerns at the present the timeliness and manner of State Farm's ACV payments under the dwelling coverage. To the extent the breach of contract claim ever consisted of the personal property coverage, the Smiths no longer advance that claim and therefore it is deemed waived and abandoned. As to the dwelling claim, the Court will attempt to address it as the parties phrase it.

### A. Refusing to Pay the Claim

To the extent the Smiths base their breach of contract claim on the assertion that State Farm breached the policy by outright refusing to pay the Smiths' claim, the evidence presented by the parties shows no question of fact on this issue. As the evidence shows, State Farm adjusted the claim and paid an initial sum of $117,536.42 for ACV on December 20, 2019, approximately 60 days after the fire loss. According to the Smiths, they shredded this check. Then, several months later,

State Farm re-issued the ACV check for an additional sum, which the Smiths also did not cash. While the Smiths may have been unsatisfied with that amount when compared to the overall dwelling limits, no evidence has been presented showing, or even suggesting, that State Farm breached the policy by refusing (or denying) the claim. Accordingly, State Farm is entitled to summary judgment to the extent the Smiths allege that State Farm breached the policy by refusing to pay their claim.

### B. Amount of the ACV Claim

The next issue concerns the amount of the ACV dwelling claim. As the evidence indisputably shows, State Farm first made an ACV payment of $117,536.42 on December 20, 2019. While the record is somewhat vague as to exactly the reasons that the Smiths shredded the initial ACV check—either because State Farm was not paying policy limits, was not paying RCV, or was not paying an amount of ACV that they thought was due—what can be gleaned from the Smiths' testimony in the light most favorable to the Smiths is that they believed they were entitled to more money than what State Farm sent to them.

State Farm argues that it has paid all of the ACV that it is contractually obligated to pay under the policy. That appears to be the case based on the evidence presented. Under the policy, the Smiths are entitled to the ACV up front. Per the policy terms, ACV is the "value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a

11

deduction to account for pre-loss depreciation," with the estimated cost to be calculated using materials, labor, overhead and profit depreciated to account for age, condition, reduction in useful life, obsolescence or any pre-loss damage including wear, tear or deterioration. (Doc. 22-2 at 36.) The evidence shows that State Farm calculated the ACV using these criteria and issued payments based on it.

In response to State Farm's summary judgment motion, the Smiths, while they gripe about the figures, provide no substantiated assertion or evidentiary showing that State Farm's ACV calculations have been factually or contractually incorrect. In short, the Smiths have failed to show a genuine question of fact to the extent their breach of contract claim is premised upon State Farm's calculation of the ACV payments, and therefore State Farm is entitled to summary judgment on this aspect of the Smiths' breach of contract claim.

### C. Timeliness of the ACV Payment

The timeliness of State Farm's ACV payments is the thornier issue. The Smiths place fault with the timeliness of State Farm's ACV payment in 2021. They claim that State Farm breached the policy by unreasonably withholding payment under the excuse of needing information about the Smiths' new mortgage company. According to the Smiths, they notified State Farm of the new mortgage company in February 2021 and, after Al Williamson of State Farm requested "verification of some sort," they gave State Farm a verification of mortgage from the new mortgage

company shortly thereafter, yet State Farm did not release the ACV check until June 2022. Due to this delay, the Smiths could no longer rebuild the home and recover the depreciation and had to deal with higher interest rates and construction costs. While the Smiths cannot point to the exact date that they gave the verification to State Farm, they do note that State Farm must have received it in the summer of 2021 because the new mortgage company was reflected on the renewal declaration issued by State Farm on September 3, 2021. As such, at their theory goes, they provided the verification that Williamson had requested, that the verification clearly was sufficient for State Farm to act upon it for purposes of endorsing it on the policy, and therefore it should have been sufficient for purposes of issuing the new ACV check.

State Farm argues that it timely made the ACV payment in December 2019, and that, had the Smiths negotiated the check at that time, the Smiths could have hired a contractor and proceeded with construction of the home well within the 2-year window of the policy and would have avoided all of the subsequent problems that arose, including forfeiture of the ability to obtain the RCV (depreciation) of the home. State Farm also argues that it timely re-issued the ACV check when the Smiths provided an *Assignment of Mortgage* from the new mortgage company in June 2022. And as to why the new mortgage company had been endorsed on the policy as of the September 2021 renewal declaration, State Farm largely pleads

13

ignorance, stating that the basis for the endorsement of a new mortgage company can come from a variety of sources, such as an escrow check from the new mortgage company.  (*See* Doc. 41 at 5.)

Simply put, there is a question of fact here.  Viewing the evidence in the light favorable to the Smiths as the Court must, the record (a declaration from Williamson) shows that when the new mortgage company issue was first discussed with Williamson in February 2021, Williamson told the Smiths that he "needed verification of some sort from the new mortgage company that it had purchased the mortgage so that [he] could issue a check to the Smiths and the new mortgage company." (Doc. 41-1 at 3.)  In that same declaration, Williamson also states that "[b]efore the suit was filed, [he] never received the verification from the new mortgage company that it had purchased the mortgage; so [he] could not process the check for the amount of the updated testimony." (*Id.*)  But key to this issue, Williamson's declaration only states that he told the Smiths that he needed "verification of some sort"; he does not state what information exactly that verification had to have other than that it needed to show that the new mortgage company had purchased the mortgage, nor does he state that he needed an

14

"assignment of mortgage." Again, he only stated that he needed "verification of some sort."[5]

The Smiths have provided evidence that they provided "verification of some sort." They have testified that they provided a "verification" of mortgage some time before September 2021 to their local State Farm agent as Williamson had instructed and that State Farm received it as evidenced by the fact that State Farm endorsed the new mortgage company onto the policy. While State Farm attempts to discredit the Smiths' factual inference from the policy endorsement, State Farm's arguments are speculative and better left for consideration by the factfinder. Indeed, if as State Farm argues, State Farm needed an assignment of mortgage from the new or old mortgage company that contained certain information about the new mortgage company's rights with respect to the insurance proceeds, State Farm should not have told the Smiths that it needed a "verification of some sort" and that this information should be given to the Smiths' local State Farm agent. But according to Williamson, that is what he told the Smiths. And this Court's review of the insurance policy reveals no policy language dictating exactly what constituted satisfactory proof of the mortgage company or the manner in which it must be given to State Farm.

---

[5] State Farm's description of the requested documents has varied. According to the Williamson declaration, he requested "verification of some sort." In an email to the Smiths on July 22, 2021, he stated he needed a "letter from your mortgage company to document that change and [he] would reissue the payment." (Doc. 22-8 at 1.) At oral argument, State Farm described it as an Assignment of Mortgage. The difference in these various descriptions is significant and cannot be overlooked both as to their title and as to their substantive content.

15

As such, there are questions of fact as to whether the Smiths provided appropriate documents concerning the new mortgage company, including the "verification of some sort" requested by Williamson, when the Smiths provided the requested documents to State Farm, whether State Farm received the requested documents and by what means, and whether State Farm timely acted upon the documentary submissions. From these questions, the jury will have to determine whether there was a breach of the policy in timely issuing the ACV payment.

While State Farm places blame for the late-payment predicament squarely on the Smiths for rejecting a timely and properly issued ACV check in December 2019, State Farm does not show, or even argue, that such blame, even if true, forecloses liability for subsequent breaches by State Farm. Indeed, the summary judgment submissions show that even State Farm voluntarily proceeded down the path that created this predicament by not insisting upon endorsement of the initial check in its original format and by telling the Smiths that it would re-issue the check once "verification of some sort" was provided.

Accordingly, State Farm is not entitled to summary judgment on the Smiths' breach of contract claim to the extent the claim is premised upon the timeliness of State Farm's issuance of a replacement ACV check.[6]

---

[6] The Court takes no position at the present moment as to what damages the Smiths could advance and obtain from this breach. That is an issue for another day when the issues have been fully briefed and presented to the Court.

### D. Entitlement to RCV

The final issue concerns the Smiths' entitlement to RCV; that is, the depreciation amount withheld by State Farm. Under the policy, RCV is not payable unless and until the Smiths have rebuilt the home with like kind and quality within 2 years of the date of loss.[7] It is undisputed that the Smiths have not rebuilt the home and that the 2-year period to do so has long expired. As such, State Farm argues there can be no breach. The Court agrees from this simplest viewpoint. Nothing in the record shows that the Smiths are contractually entitled to the RCV or the depreciation amount, at least at the present moment.

But the issue at hand is a bit more complex. The Smiths claim that had State Farm timely issued the ACV payment, they would have moved forward with rebuilding and would have begun, if not finished, constructing their replacement home within the 2-year payment period and therefore would have been able to receive the RCV payment. This issue is not only rooted in terms of the strict policy language itself (including a possible estoppel issue), but also in terms of the Smiths' damages claim as it concerns the timeliness of the ACV payment. The Court reserves ruling on this aspect of the claim to the extent it is asserted as an extension

---

[7] From the Williamson declarations submitted by State Farm in support of its summary judgment motion, State Farm appears to take a broader, and more pro-insured, viewpoint of that 2-year period by suggesting that it would pay RCV depreciation if the Smiths had provided a signed copy of a contract to rebuild the home with like kind and quality. (*See* Doc. 54-1 at 1–2.)

17

and part of the Smiths' claimed damages for the allegedly untimely ACV payment. But to the extent the Smiths assert there is a stand-alone breach of contract claim for nonpayment of the RCV (depreciation), such a claim is premature and unripe since the home has not been rebuilt. Therefore the claim is dismissed without prejudice *sua sponte* on grounds of jurisdiction. *See Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 805 (11th Cir. 2009) (per curiam) ("If a claim is not ripe, the district court lacks jurisdiction to issue a ruling on the merits and therefore must dismiss that claim without prejudice.").

## VI.   CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that Defendant State Farm Mutual Fire and Casualty Insurance Company's *Motion for Summary Judgment* (Doc. 22) is **DENIED** as to the claim for Breach of Contract (Count I) to the extent it concerns the timeliness of State Farm's payment of the ACV on the Smiths' dwelling claim, and is **GRANTED** in all other respects. The Breach of Contract claim (Count I) will proceed on the issue of the timeliness of State Farm's payment of the ACV on the Smiths' dwelling claim.

DONE, on this the 15th day of June, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE